# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

LESLIE K. HARRACH,

      Appellant,

      v.

SOCIAL SECURITY
   ADMINISTRATION,

      Agency.

DOCKET NUMBER
DE-1221-12-0491-W-2

DATE: September 13, 2022

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Leslie K. Harrach</u>, Phoenix, Arizona, pro se.

<u>Cynthia B. De Nardi</u>, Esquire, San Francisco, California, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

## FINAL ORDER

The appellant has filed a petition for review of the initial decision, which denied her request for corrective action. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this Final Order to (1) vacate the administrative judge's credibility determinations made after a hearing the appellant did not request, (2) find that the appellant established that her four disclosures were protected and were contributing factors in her termination, and (3) find a slight retaliatory motive on the part of relevant agency officials, we AFFIRM the initial decision.

## BACKGROUND

¶2    Effective August 29, 2010, the agency appointed the appellant to an excepted-service Attorney-Advisor position with the agency's Office of Disability Adjudication and Review in Phoenix, Arizona. *Harrach v. Social Security Administration*, MSPB Docket No. DE-1221-12-0491-W-1, Initial Appeal File (IAF), Tab 8 at 115. The appointment was subject to a 2-year trial period. *Id.* At all times relevant to this appeal, the appellant's first-line supervisor was M.H., Attorney Adjudicator and Group Supervisor, her second-line supervisor was L.W., Hearing Office Director, and her third-line supervisor was P.F., Hearing Office Chief Administrative Law Judge (CALJ). *Harrach v. Social Security Administration*, MSPB Docket No. DE-1221-12-491-W-2, Appeal File (W-2 AF), Tab 45 at 40-41.

¶3      On August 17, 2012, CALJ P.F. issued the appellant a notice of termination. IAF, Tab 8 at 53-54. In the notice, the agency provided the following narrative in support of the termination:

> Despite counseling and opportunity to improve, you have failed to properly demonstrate courtesy and consideration when interacting with coworkers, including management, and you have not conducted yourself with propriety.
>
> On October 19, 2010 and October 5, 2011, you were advised that all employees must adhere to the Standards of Conduct for Employees of the Executive Branch as explained in the Annual Personnel Reminders. Specifically, the Annual Personnel Reminders, Part 1.6, states that you "are responsible for observing the requirements of courtesy and consideration while dealing with coworkers or serving the public and must conduct yourself with propriety." On May 24, 2012 you were counseled by your first-line supervisor after you made discourteous remarks. For example, you told [M.H.], your supervisor, that she was "stupid", and "incompetent." During the counseling session with her, you engaged in further misconduct by making additional discourteous remarks. You indicated that [M.H.] was not a legal professional and that her professional license was "a fake." You also frequently interrupted [M.H.] during the meeting and used profanity, among other inappropriate conduct. After the counseling session, your supervisor e-mailed you a summary of the discussion. This e-mail also reminded you about the requirement that you treat others with courtesy and respect, as set forth in the Annual Personnel Reminders, Part 1.6. Subsequently, you continued to interact with others, including management, in an aggressive and inappropriate manner.

*Id.* The appellant's termination was effective August 27, 2012. *Id.* at 52.

¶4      On September 4, 2012, the appellant timely filed an individual right of action (IRA) appeal in which she alleged that the agency terminated her in retaliation for her protected whistleblower disclosures. IAF, Tab 1 at 3-5, 11-16. The appellant indicated on her initial appeal form that she requested a hearing. *Id.* at 2. On January 23, 2013, the administrative judge dismissed the appeal without prejudice pending a Board determination regarding the retroactive effect of the Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, 126 Stat. 1465 (WPEA). IAF, Tab 14, Initial Decision. On July 15, 2013, the

appeal was refiled sua sponte following the Board's decision in *Day v. Department of Homeland Security*, 119 M.S.P.R. 589 (2013). W-2 AF, Tab 1.

¶5      The administrative judge subsequently issued a jurisdictional order providing the parties with their respective burdens of proof in an IRA appeal. W-2 AF, Tab 8. After the parties had an opportunity to respond to the order, the administrative judge found that the Board has jurisdiction over the appellant's IRA appeal. W-2 AF, Tab 40. Specifically, she found that the appellant had exhausted her administrative remedies before the Office of Special Counsel (OSC) by first raising her concerns in an OSC complaint dated August 6, 2012, as amended on August 31, 2012. *Id.* at 1. In addition, she found that the appellant nonfrivolously alleged that she was terminated during her trial period in retaliation for having made protected whistleblower disclosures. *Id.* at 2. The administrative judge also found that a separation from Federal service constituted a personnel action under 5 U.S.C. § 2302(a)(2)(A). *Id.*

¶6      Having found jurisdiction over the appeal, the administrative judge granted a hearing on the merits of the appeal. W-2 AF, Tabs 20, 40. The appellant subsequently filed a motion for a decision on the written record. W-2 AF, Tab 42. Thereafter, the administrative judge issued an order cancelling the hearing and providing the parties with the opportunity to submit closing evidence and argument no later than January 31, 2014. W-2 AF, Tab 44. Following the submission of closing evidence and argument by the parties, the administrative judge ordered a hearing on her own initiative, relying on 5 C.F.R. § 1201.41(b)(5) for doing so. W-2 AF, Tab 57. On May 19-21, 2014, she held an in-person hearing. W-2 AF, Tab 69.

¶7      On May 25, 2016, the administrative judge issued an initial decision denying the appellant's request for corrective action. W-2 AF, Tab 76, Initial Decision (W-2 ID). She first found that the appellant established a prima facie case of whistleblower reprisal. *Id.* at 18-19. In that regard, she found that the appellant raised the following disclosures in both her OSC complaint and her

Board appeal: (1) a May 2012 meeting with CALJ P.F. during which the appellant disclosed fraud and discrimination by her supervisor M.H. concerning administrative law judge (ALJ) M.T. and attorney M.C.; (2) a June 2012 affidavit submitted to the Equal Employment Opportunity Commission (EEOC) by the appellant disclosing "[M.H.]'s fraud, coercion, abuse of power and discrimination"; (3) her July 25, 2012 letter to the EEOC disclosing that the agency violated the Privacy Act when it improperly accessed her official personnel records; and (4) her August 3, 2012 letter to the EEOC in which she disclosed "witness tampering activities of [M.H.], [CALJ P.F.], and [D.T.] that occurred on August 2, 2012." W-2 ID at 3; W-2 AF, Tab 40 at 2. Based on extensive credibility determinations, the administrative judge found that the meeting between the appellant and CALJ P.F. described in disclosure (1) did not occur, W-2 ID at 12-13, 19, and that the events described in disclosure (2) did not happen, W-2 ID at 6-8, 15, 19. She found, however, that it was undisputed that the appellant's disclosures to the EEOC in July and August 2012 were in fact made and that disclosures (3) and (4) evidenced a violation of law and therefore constituted protected disclosures under 5 U.S.C. § 2302(b)(8).[2] W-2 ID at 19.

---

[2] To the extent the appellant may be asking the Board to order corrective action based on alleged reprisal for engaging in equal employment opportunity (EEO) activity, we (and the administrative judge) did not address her concerns in that context. The disclosures and personnel action at issue in this case happened before the enactment of the WPEA. The WPEA did not apply retroactively to disclosures or activities that occurred before its December 27, 2012 effective date. The WPEA expanded the IRA appeal rights afforded under 5 U.S.C. § 1221(a) to include requests for corrective action based not only on the prohibited personnel practices discussed in section 2302(b)(8) but also for those discussed in sections 2302(b)(9)(A)(i), (B), (C), and (D). *See* WPEA, § 101(b)(1), 126 Stat. at 1465-66; *see also* 5 U.S.C. § 1214(a)(3). Most pertinent here, under the WPEA, an employee has the right under certain circumstances to seek corrective action when she suffers reprisal due to the filing of an EEO complaint. *See* 5 U.S.C. § 2302(b)(9)(A)(i) (prohibiting an agency from retaliating against an employee for "the exercise of any appeal, complaint, or grievance right" related to whistleblowing). However, the WPEA's predecessor statute, the Whistleblower Protection Act (WPA), did not authorize the Board to order corrective action in cases involving alleged reprisal for engaging in EEO activity. *See Spruill v. Merit Systems Protection Board*, 978 F.2d 679, 690 (Fed. Cir. 1992) (recognizing that the WPA did

Furthermore, the administrative judge found that the appellant established by preponderant evidence that her protected disclosures were a contributing factor in her termination.  W-2 ID at 20-22.

¶8  Having found that the appellant established a prima facie case of whistleblower retaliation as to disclosures (3) and (4), the administrative judge considered whether the agency established by clear and convincing evidence that it would have terminated the appellant in the absence of her protected disclosures.  W-2 ID at 22-27.  She found the agency met its burden of proof and, therefore, she denied the appellant's request for corrective action.  W-2 ID at 27-28.

¶9  The appellant timely filed a petition for review.  Petition for Review (PFR) File, Tab 1.  The agency has filed a response, PFR File, Tab 6, and the appellant has filed a reply to the agency's response, PFR File, Tab 7.  The appellant raises the following arguments on review:  (1) the administrative judge's credibility findings should be overturned because the administrative judge failed to properly weigh and consider evidence and misapplied *Hillen*;[3] (2) the administrative judge improperly excluded evidence and testimony during the hearing; (3) the administrative judge erred in convening the hearing following the appellant's motion for a decision on the written record; (4) the administrative judge erred in finding that two of her alleged disclosures were not protected; (5) the

not provide individuals with a right to bring an IRA appeal based on claims of reprisal for making disclosures protected under section 2302(b)(9)).  As a result, neither we nor the administrative judge analyzed the appellant's EEO activity as a possible section 2302(b)(9) retaliation claim under the WPEA.

[3] To resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version she believes, and explain in detail why she found the chosen version more credible, considering such factors as:  (1) the witness's opportunity and capacity to observe the event or action question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor.  *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).

administrative judge failed to draw an adverse inference against the agency for changing its "story . . . [once] it realized that the knowledge/timing test and evidence went against them"; (6) the administrative judge erred in finding that the agency met its burden of proof by clear and convincing evidence; (7) the administrative judge committed a procedural error by delaying the issuance of the initial decision; and (8) the administrative judge did not consider that the agency violated the notice requirement in the appellant's union contract by failing to provide her with sufficient notice of her termination.  PFR File, Tabs 1, 7.

## DISCUSSION OF ARGUMENTS ON REVIEW

The administrative judge should have decided the appeal based on the written record.

¶10    As noted above, the appellant contends on review that the administrative judge erred in convening a hearing over her motion for a decision on the written record.  PFR File, Tab 1 at 13.  Under 5 C.F.R. § 1201.41(b)(5), an administrative judge has the authority to order a hearing on her own initiative if the administrative judge determines that a hearing is necessary to resolve important issues of credibility; ensure that the record on significant issues is fully developed; or to otherwise ensure a fair and just adjudication of the case.  An administrative judge's authority to order a hearing, however, must be viewed in light of the Congressional purpose underlying the right to a hearing.  *Dodd v. Department of the Interior*, 48 M.S.P.R. 582, 584 (1991).  Our reviewing court has stated that the hearing right exists for the benefit of the appellant and that "a hearing with live witnesses should never be forced upon an employee who has forfeited or abandoned [her] right to a hearing."  *Callahan v. Department of the Navy*, 748 F.2d 1556, 1559 (Fed. Cir. 1984) (holding that when an appellant failed to appear for a hearing without a valid excuse, it was error for the administrative judge to continue the hearing without the appellant, vacating the Board's decision, and remanding the case for reconsideration based "on the

record developed by the agency during its investigation"); *see Dodd*, 48 M.S.P.R. at 584.

¶11    While we are sympathetic as to why the administrative judge, as the trier of fact and relying on the language of section 1201.41(b)(5), may have wished to develop the record on the issues before her in this whistleblower case, we find that the administrative judge should have granted the appellant's request for a decision on the written record and determined whether to grant or deny the appellant's request for corrective action without relying on the hearing testimony. *See Grimes v. General Services Administration*, 84 M.S.P.R. 244, ¶ 8 (1999); *Kirkpatrick v. Department of the Interior*, 49 M.S.P.R. 316, 318 (1991); *Dodd*, 48 M.S.P.R. at 584-85.    Therefore, under the circumstances of this case, the administrative judge's credibility findings are vacated.    However, because the written record is complete, we will rule on the merits of the appeal without remanding this appeal to the field office.    *See Grimes*, 84 M.S.P.R. 244, ¶ 9 (declining to remand the appeal to the regional office when the administrative judge erred in considering the hearing testimony in reaching her decision but the record was complete).    Because we reach our decision in this case based on the written record, as the appellant sought below, we will not consider the appellant's challenges to the administrative judge's credibility determinations, nor will we consider her argument that the administrative judge improperly excluded evidence and argument during the hearing.

¶12    In deciding this case on the written record, we have considered, among other things, the statements and affidavits submitted by the parties.    These out-of-court statements and affidavits constitute hearsay.    Hearsay evidence is admissible in Board proceedings, and the assessment of the probative value of hearsay evidence necessarily depends on the circumstances of each case. *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83–87 (1981).    The following factors may be included in considering the probative value of the hearsay evidence:    (1) the availability of persons with firsthand knowledge to

testify at the hearing; (2) whether the statements of the out-of-court declarants were signed or in affidavit form and whether anyone witnessed the signing; (3) the agency's explanation for failing to obtain signed or sworn statements; (4) whether the declarants were disinterested witnesses to the events and whether the statements were routinely made; (5) the consistency of declarants' accounts with other information in the case, internal consistency, and their consistency with each other; (6) whether corroboration for statements can otherwise be found in the agency record; (7) the absence of contradictory evidence; and (8) the credibility of the declarants when they made the statement attributed to them. *Id.* at 87. We have considered these factors in assessing whether the parties have met their respective burdens of proof.

<u>The appellant established a prima facie case of whistleblower retaliation.</u>

¶13     After establishing the Board's jurisdiction in an IRA appeal, as the administrative judge found the appellant did in this case,[4] an appellant must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that she made a protected disclosure that was a contributing factor in a personnel action taken against her. 5 U.S.C. § 1221(e)(1); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). If the appellant makes out a prima facie case, then the agency is given an opportunity to prove by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(1)-(2); *Lu*, 122 M.S.P.R. 335, ¶ 7. Preponderant evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely true than untrue. 5 C.F.R. § 1201.4(q). Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm

---

[4] The parties do not challenge the administrative judge's jurisdictional finding on review. Because the agency does not challenge that finding, we discern no basis for disturbing it.

belief as to the allegations sought to be established.  5 C.F.R. § 1209.4(e).  It is a higher standard than preponderant evidence.  *McCarthy v. International Boundary & Water Commission*, 116 M.S.P.R. 594, ¶ 43 (2011), *aff'd*, 497 F. App'x 4 (Fed. Cir. 2012).

> *The appellant established by preponderant evidence that she made protected disclosures.*

¶14      A protected disclosure is a disclosure of information that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.   5 U.S.C. § 2302(b)(8)(A); *Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 12 (2014).   A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions evidence one of the categories of wrongdoing listed in section 2302(b)(8)(A).  *Id.*; *see Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999).  To establish that she made a protected disclosure, the appellant need not prove that the matter disclosed actually established one of the types of wrongdoing listed under section 2302(b)(8)(A); rather, she must show that the matter disclosed was one that a reasonable person in her position could have believed evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8). *Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013). Moreover, the Board does not require an appellant to correctly label the category of wrongdoing under 5 U.S.C. § 2302(b)(8).  *Tullis v. Department of the Navy*, 117 M.S.P.R. 236, ¶ 7 (2012).

¶15      As previously noted, the administrative judge found that the appellant raised the following disclosures:  (1) a May 2012 meeting with CALJ P.F. where the appellant claims she disclosed fraud and discrimination by her supervisor M.H. regarding ALJ M.T. and attorney M.C.; (2) a June 2012 affidavit submitted to the EEOC disclosing "[M.H.]'s fraud, coercion, abuse of power and

discrimination"; (3) a July 25, 2012 letter to the EEOC disclosing Privacy Act violations; and (4) an August 3, 2012 letter to the EEOC in which the appellant disclosed "witness tampering activities of [M.H.], [CALJ P.F.], and [D.T.] that occurred on August 2, 2012." W-2 ID at 3; W-2 AF, Tab 40 at 2. We discern no basis for disturbing the administrative judge's findings that the appellant's disclosures to the EEOC in July and August 2012 occurred. In particular, the record reflects that, by letter dated July 25, 2012, the appellant alleged to the EEOC that the agency violated the Privacy Act by M.H. disclosing her personal information to the agency's EEOC counsel and by the agency's EEOC counsel disclosing the information to another employee.[5] IAF, Tab 5 at 44-48. In addition, on August 3, 2012, the appellant alleged to the EEOC that the agency engaged in witness tampering when it asked her to review the transcript of a deposition she had given in another employee's EEOC case. *Id.* at 59-61. She alleged that M.H. raised her voice and repeatedly told her to sign the deposition and that the appellant felt under such duress that she was unable to properly review her deposition. *Id.* The appellant contended that M.H.'s actions violated Federal Rule of Civil Procedure 30(e) and 18 U.S.C § 1512.[6] *Id.*

¶16 We agree that a reasonable person in the appellant's position could reasonably believe that these disclosures evidenced a violation of law. W-2 ID at 19. Thus, we affirm the administrative judge's findings that disclosures (3) and (4) constitute protected disclosures under 5 U.S.C. § 2302(b)(8). *See*

---

[5] The Privacy Act, 5 U.S.C. § 552a, generally prohibits an agency from disclosing records without the prior written consent of the individual to whom the record pertains. *See* 5 U.S.C. § 552a(b). For purposes of section 552a, the term "record" means any grouping of information about an individual that is maintained by an agency and that contains, among other things, her name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or photograph. *See* 5 U.S.C. § 552a(a)(4).

[6] Section 1512, titled "Tampering with a witness, victim, or an informant," prohibits intimidating a person with intent to influence that person's testimony or cause her to withhold testimony or a document from an official proceeding. *See* 5 U.S.C. § 1512(b). Federal Rule of Civil Procedure 30 relates to depositions by oral examination.

*Hupka v. Department of Defense*, 74 M.S.P.R. 406, 410-11 (1997) (finding that the appellant's disclosures regarding alleged Privacy Act violations were protected); *see also Kalil v. Department of Agriculture*, 96 M.S.P.R. 77, ¶ 16 (2004) (determining that the appellant made a nonfrivolous allegation that his disclosure evidenced a violation of 18 U.S.C. § 1512). In making these determinations, we do not find that the appellant actually established violations of a law, rule, or regulation, but rather that she met her burden of proving that the matter disclosed was one that a reasonable person in her position could believe evidenced such a violation. *See Weber v. Department of the Army*, 9 F.3d 97, 101 (Fed. Cir. 1993) (finding that the Whistleblower Protection Act does not give the Board the right to review the substance of whistleblowing claims).

¶17 The administrative judge relied on extensive credibility determinations in finding that disclosure (1) did not happen and that the events in disclosure (2) did not occur. We have considered the documentary evidence supporting these disclosures and, as set forth below, we find that these disclosures are in fact protected.

¶18 In her August 31, 2012 amended OSC complaint, the appellant stated the following regarding disclosure (1):

> My direct supervisor, [M.H.], and . . . [CALJ P.F.] became aware in early May that I had revealed the discrimination and fraud by [M.H.] against [ALJ M.T.] and [M.C.]. [P.F.] chose to do nothing about it. [P.F.] and [M.H.] were aware that I would be serving as a witness in the case of another individual who had proceedings in front of the [EEOC] and would be submitting an affidavit that disclosed, among other things, the discrimination against [ALJ M.T.] and [M.C.] as well as the individual involved in the EEOC case.

IAF, Tab 5 at 34. In a statement on jurisdiction made under penalty of perjury, the appellant contended that, during a conversation with CALJ P.F. in early May 2012, she disclosed that M.H. directed her to sign prewritten affidavits. W-2 AF, Tab 12 at 5-6, 9. According to the appellant, the affidavits stated that

she witnessed ALJ M.T. verbally abusing and berating staff and that M.C. was verbally abusive to staff and did outside work during work hours. *Id.*

¶19 The appellant raised similar allegations in her deposition testimony. Specifically, she stated under oath that, in early May 2013, she told CALJ P.F. that M.H. attempted to "coerce [her] into filing false affidavits" against ALJ M.T. and M.C. in an effort to get them removed. W-2 AF, Tab 36 at 31, 35-36. The appellant stated that M.H. wanted her to say that Judge M.T. verbally attacked and berated people and that M.C. used work time to do outside work. *Id.* at 36-37. She further stated that she never witnessed the incidents M.H. asked her to detail in the affidavits. *Id.* at 36.

¶20 Furthermore, the appellant reiterated her allegations that M.H. attempted to coerce her into signing "false affidavits" in a June 21, 2012 affidavit to the EEOC, which forms the basis for disclosure (2). W-2 AF, Tab 15 at 12-13. In her affidavit, she stated that M.H. attempted to coerce her to file false affidavits regarding an ALJ and a Senior Attorney Advisor. *Id.* at 13.

¶21 In a declaration under penalty of perjury, CALJ P.F. stated that she did not recall having a conversation with the appellant in early May 2012 regarding M.H.'s alleged "attempted coercion." W-2 AF, Tab 45 at 29-30. She also stated that she did not recall the appellant "ever telling [her] anything about [M.H.] committing fraud or coercion." *Id.* at 30. CALJ P.F. *did* state that the appellant asked her on May 30, 2012, whether she was aware that M.H. "wanted [the appellant] to keep an eye on [M.C.'s] activities at work." The record also contains a declaration under penalty of perjury from M.H. In the declaration, M.H. did not refer to the affidavits described in disclosures (1) and (2). *Id.* at 40-46.

¶22 We find the appellant's statements relating to M.H.'s request that the appellant sign false affidavits to have significant probative value. *See Borninkhof*, 5 M.S.P.R. at 87. As set forth above, these statements were made under penalty of perjury or in an affidavit form, and are internally consistent.

Moreover, they are not directly contradicted by M.H.'s sworn declaration. Regarding the appellant's statements that she told CALJ P.F. in early May that M.H. attempted to force her to commit perjury, we find this evidence entitled to less probative value because it is contradicted by CALJ P.F.'s sworn statement that such a conversation did not occur. However, the appellant's statements on this issue are nonetheless entitled to some probative value because they were made under penalty of perjury and are internally consistent. Thus, upon applying the *Borninkhof* factors to the hearsay evidence submitted by the parties, and without the benefit of the administrative judge's comprehensive credibility findings on these issues, we find it is more likely true than untrue that disclosures (1) and (2) occurred.

¶23    Furthermore, we find that disclosure (1) constitutes a protected disclosure. The appellant characterized disclosure (1) as evidencing a violation of law, rule, or regulation—specifically, a violation of 18 U.S.C. § 1622. W-2 AF, Tab 12 at 10. Section 1622, titled "Subornation of perjury," states "[w]hoever procures another to commit any perjury is guilty of subornation of perjury, and shall be fined under this title or imprisoned not more than five years, or both." She also alleged that her disclosure evidenced an abuse of authority on the part of M.H. *Id.* at 10-11.

¶24    We find that a reasonable person in the appellant's position could reasonably believe that her disclosure to CALJ P.F. evidenced a violation of law, rule, or regulation or an abuse of authority. At the very least, the appellant's disclosure may evidence a violation of 18 U.S.C. § 1001, which prohibits making false statements in any matter within the jurisdiction of a Federal agency. *See Luecht v. Department of the Navy*, 87 M.S.P.R. 297, ¶ 13 (2000) (finding that the appellant made a nonfrivolous allegation that his disclosure evidenced a violation of 18 U.S.C. § 1001). An abuse of authority occurs when there is an arbitrary and capricious exercise of power by a Federal official or employee that adversely affects the rights of any person or results in personal gain or advantage to herself

or to other preferred persons. *Pulcini v. Social Security Administration*, [83 M.S.P.R. 685](), ¶ 9 (1999), *aff'd*, 250 F.3d 758 (Fed. Cir. 2000). The Board has stated that there is no de minimis standard for abuse of authority. *Id.* We find that a disinterested observer could reasonably conclude that M.H.'s directing the appellant to sign false affidavits constituted an arbitrary and capricious exercise of power that adversely affected the rights of ALJ M.T. and those of M.C.

¶25    Concerning disclosure (2), the record reflects that, in an affidavit dated June 21, 2012, the appellant alleged to the EEOC that [M.H.] "attempted to coerce me to file false affidavits that would have been untruthful and not based on personal observation or knowledge" in order to get two other employees removed. W-2 AF, Tab 15 at 12-13. For the same reasons set forth above for disclosure (1), we find that a reasonable person in the appellant's position could reasonably believe that disclosure (2) evidenced a violation of law, rule, or regulation and an abuse of authority. We therefore find that disclosure (2) also constitutes a protected disclosure. Accordingly, we affirm the administrative judge's findings that disclosures (3) and (4) are protected, but we modify the initial decision to find that disclosures (1) and (2) also are protected under [5 U.S.C. § 2302]()(b)(8).

> *The appellant established by preponderant evidence that her disclosures were a contributing factor in her termination.*

¶26    The term "contributing factor" means any disclosure that affects an agency's decision to threaten, propose, take, or not take a personnel action with respect to the individual making the disclosure. *Usharauli v. Department of Health & Human Services*, [116 M.S.P.R. 383](), ¶ 31 (2011). The most common way of proving the contributing factor element is the "knowledge/timing" test. *Wadhwa v. Department of Veterans Affairs*, [110 M.S.P.R. 615](), ¶ 12, *aff'd*, 353 F. App'x 435 (Fed. Cir. 2009). Under that test, an appellant can prove the contributing factor element through evidence that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action

within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.* To satisfy the test, the appellant need demonstrate only that the fact of, not necessarily the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way. *Armstrong v. Department of Justice*, 107 M.S.P.R. 375, ¶ 19 (2007), *overruled on other grounds by Edwards v. Department of Labor*, 2022 MSPB 9.

¶27        The administrative judge found that the appellant established that disclosures (3) and (4) were a contributing factor in her termination. She found that CALJ P.F., M.H., L.W., and other pertinent agency officials involved in the appellant's termination disclaimed knowledge of the appellant's protected disclosures. W-2 ID at 20. The administrative judge noted, however, that the appellant sent copies of her July and August disclosures to the attorney representing the agency before the EEOC and that he presumably received a copy of her June affidavit. *Id.* at 21. She found that, based on the circumstances, it was reasonable to infer that relevant agency officials knew the appellant was reporting concerns to the EEOC. *Id.* The administrative judge also noted that the appellant sent an email to L.W., copying CALJ P.F., which asserted that L.W. told the appellant, "[w]e can't have you filing things with the court about management and our attorney. We can produce your employment records, we are your employer and there will be a request in the file." *Id.*; IAF, Tab 5 at 53-54. The administrative judge found that this email suggests that L.W. had been told about the appellant's July 25, 2012 letter expressing Privacy Act concerns. W-2 ID at 21. She thus found that the appellant met the knowledge/timing test as to disclosures (3) and (4). The agency does not challenge these findings on review, and we discern no basis for disturbing them.[7]

_____

[7] As previously noted, the appellant contends on review that the administrative judge failed to draw an adverse inference against the agency for changing its "story . . . [once] it realized that the knowledge/timing test and evidence went against them." PFR File,

¶28    We find that the appellant also established that disclosures (1) and (2) were a contributing factor in her termination. The appellant established both components of the knowledge/timing test as to disclosure (1) because she made the disclosure to CALJ P.F., who issued her letter of termination, and because the May 2012 meeting during which she made the disclosure occurred months prior her August 27, 2012 termination. *See Mudd v. Department of Veterans Affairs*, 120 M.S.P.R. 365, ¶ 10 (2013) (holding that a personnel action that occurred within 1 year of a protected disclosure satisfies the "timing" component of the knowledge/timing test). As previously noted, the administrative judge found that, based on the specific circumstances of this case, it was reasonable to infer that the relevant agency officials had knowledge that the appellant was reporting concerns to the EEOC. W-2 ID at 21. The agency does not dispute the administrative judge's findings regarding contributing factor on review. In addition, the appellant has met the timing component of the knowledge/timing test for disclosure (2). Thus, under the circumstances of this case, we find that the appellant has met the contributing factor requirement with regard to disclosure (2).

¶29    We therefore affirm the administrative judge's findings that the appellant met the contributing factor requirement concerning disclosures (3) and (4), but modify the initial decision to find that the appellant also established contributing factor regarding disclosures (1) and (2).

---

Tab 1 at 10-11. The appellant appears to argue that the agency "changed their story" to show that the appellant's termination was initiated before her first disclosure to CALJ P.F. in early May 2012. *Id.* at 11. However, while noting that agency officials discussed the appellant's separation prior to her protected disclosures, W-2 ID at 24, the administrative judge ultimately found that the appellant established the contributing factor element regarding disclosures (3) and (4). Thus, to the extent the agency may have submitted evidence to show the personnel action was contemplated prior to the appellant's disclosures, the administrative judge did not find any such evidence to be dispositive concerning the contributing factor element.

<u>The agency established by clear and convincing evidence that it would have taken the same personnel action absent the appellant's disclosures.</u>

¶30    In determining whether the agency has met its burden of proving by clear and convincing evidence that it would have taken the same personnel action in the absence of the appellant's whistleblowing, the following factors should be considered: (1) the strength of the agency's evidence in support of its personnel action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 36 (2011). When conducting an assessment of the *Carr* factors, the U.S. Court of Appeals for the Federal Circuit has instructed the Board to "evaluate all the pertinent evidence in determining whether an element of a claim or defense has been proven adequately," *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012), and, building on this directive, the Board has held that a proper analysis of the clear and convincing evidence issue requires that all of the evidence be weighed together—both the evidence that supports the agency's case and the evidence that detracts from it, *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 37 (2013) (citing *Whitmore*, 680 F.3d at 1368).

¶31    Regarding *Carr* factor one, we agree with the administrative judge's finding that the agency had strong evidence in support of its personnel action. W-2 ID at 23-24. As previously noted, the agency charged the appellant with "interact[ing] with others, including management, in an aggressive and inappropriate manner." IAF, Tab 8 at 54. In reaching her finding concerning the first *Carr* factor, the administrative judge correctly noted that the record is replete with combative, adversarial emails sent by the appellant to her superiors. W-2 ID at 23. The record also contains evidence indicating that the appellant acted inappropriately towards nonmanagement employees.

¶32     On April 13, 2012, the appellant sent M.H. an email demanding that she answer a series of interrogatory-style questions about work assignments. W-2 AF, Tab 36 at 147-48. The email included the following:

> Please state which parts you disagree with (i.e. what is not to your understanding (*see* original email)). Clarify your position in disagreement.
>
> Let's make this simple and basic:
>
> (1) Did I not request[] work be added to my queue on Thursday, April 12, 2012 via email? Yes or No?

*Id.* On May 2, 2012, the appellant sent L.W., her second-line supervisor, an email objecting to L.W.'s instruction to pick up additional work or request leave as a "baseless, unconscionable personnel decision." *Id.* at 132. The appellant further characterized L.W.'s response as "inappropriate" and accused agency management of "incompetence." *Id.*

¶33     On May 24, 2012, M.H. sent an email to an agency official stating that the appellant had come to her office and accused another employee of "stealing" her "quick parts" to draft his decisions. *Id.* at 126. According to M.H., the appellant announced she was "going to confront [the employee]." *Id.* M.H. stated that, after discussing the issue with the employee, she asked the appellant to come to her office. *Id.* During their conversation, the appellant called M.H. "stupid" and "incompetent." *Id.* M.H. expressed a concern in her email that the appellant would attempt to confront the employee later in the day, despite her instruction that she abstain from doing so. *Id.* While M.H.'s recollection of the appellant's statements constitutes hearsay evidence, we find this evidence to have significant probative value. *See Borninkhof*, 5 M.S.P.R. at 87.

¶34     Following the appellant's conduct on that date, M.H. decided to counsel the appellant about her recent behavior in the office. W-2 AF, Tab 6 at 80-83. M.H. subsequently memorialized her May 24, 2012 counseling session with the appellant in an email she sent to the appellant on that date. *Id.* According to M.H., before she could begin counseling the appellant, the appellant informed her

"in a very loud and indignant manner that [she] had things stolen" from her office on three occasions. *Id.* at 80. M.H. stated that the appellant then yelled at her and told her she knew about the thefts. *Id.* M.H. advised the appellant that she had found the appellant's behavior to be unprofessional on several occasions and reminded her that, as a licensed legal professional and Federal employee, she was obligated to treat all people with respect and courtesy. *Id.* The appellant responded by telling her that M.H. was not a licensed legal professional and that her license was fake. *Id.* M.H. further stated in the email that the appellant interrupted her constantly during the meeting, called her a liar, and stated that what M.H. was telling her was bullshit. *Id.* at 81. M.H.'s email description of her May 24, 2012 meeting with the appellant is corroborated by her sworn declaration, in which she alleged that, during the May 24, 2012 counseling session, the appellant had interrupted her numerous times, called her a liar, and told her that her law license was "fake." W-2 AF, Tab 45 at 43. While M.H.'s account of the appellant's statements constitutes hearsay, we find this evidence to have considerable probative value. *See Borninkhof*, 5 M.S.P.R. at 87.

¶35 On July 26, 2012, the appellant sent M.H. an email stating, among other things, "[t]his back and forth is getting nowhere and is wasting time I could be writing, and you all could be doing more important things. I think we have another of your comprehension issues." W-2 AF, Tab 36 at 118. The appellant's email followed an email conversation between M.H. and the appellant during which the appellant stated that she could not "access references/research on the Intranet," and M.H. attempted to help her resolve this issue. *Id.* at 118-19.

¶36 Upon considering the documentary evidence in support of the agency's action, we affirm the administrative judge's finding that the agency had strong evidence in support of the appellant's termination. This evidence reflects that the appellant behaved in an inappropriate and unprofessional manner toward her managers and others at the agency both before and after M.H. counseled her on May 24, 2012. Further, as noted by the administrative judge, the agency warned

the appellant that it was scrutinizing her during her trial period. W-2 ID at 24; IAF, Tab 5 at 80; *see Lewis v. Department of the Army*, 63 M.S.P.R. 119, 126 (1994) (noting an agency's obligation to use the probationary period to assess the appellant's potential for success), *aff'd*, 48 F.3d 1238 (Fed. Cir. 1995). We thus find that *Carr* factor one weighs in the agency's favor.

¶37    Regarding *Carr* factor two, the administrative judge found that the agency officials involved in the appellant's termination did not have a motive to retaliate against the appellant. W-2 ID at 24-26. In relevant part, the administrative judge found that management officials started discussing the appellant's separation prior to the appellant's protected disclosures. *Id.* at 24. The administrative judge noted that CALJ P.F.'s decision to terminate the appellant was firm by early July 2012, prior to the appellant's July and August 2012 disclosures. *Id.*

¶38    The appellant disputes the administrative judge's finding regard *Carr* factor two on review, arguing that agency officials had a strong retaliatory motive and that they fabricated reasons for the personnel action following the decision to terminate her. PFR File, Tab 1 at 31. Specifically, as noted above, the appellant contends that the agency attempted to show that her termination was initiated before her first disclosure to the CALJ in early May 2012. *Id.* at 11.

¶39    The record reflects that agency officials were concerned about the appellant's conduct prior to her first disclosure and considered the possibility of terminating her as early as May 2, 2012. In a sworn declaration, L.W. stated that the appellant had communicated impatiently and inappropriately with management in April 2012. W-2 AF, Tab 45 at 34. Because L.W. was concerned about the appellant's misconduct, on May 2, 2012, she contacted P.B., an agency regional attorney, to inquire whether the appellant was hired under an excepted-service appointment. *Id.* at 35. L.W. stated that she "raised the issue because [she] was not sure if the other managers in the office were aware of [the] [a]ppellant's status or the possibility of terminating her appointment." *Id.* In a sworn declaration, P.B. stated that, in March 2012, he began assisting M.H. with

"employee relations issues involving the [a]ppellant." *Id.* at 38. He stated that L.W. contacted him on May 2, 2012, to discuss problems with the appellant and that L.W. asked him to determine whether the appellant was serving a trial period because she was concerned about the appellant's behavior. M.H. stated in a sworn declaration that she contacted a regional agency attorney in April 2012 to discuss the appellant's "rude and discourteous" manner. *Id.* at 44. Based on the documentary evidence, we find the appellant's contention, that the agency "fabricated" reasons for her termination, lacks merit. The record reflects that the appellant's supervisors expressed a strong concern about her conduct prior to her first disclosure in early May 2012 and that L.W. inquired about the possibility of terminating her as early as May 2, 2012.

¶40      In light of this evidence, and a lack of record evidence suggesting a strong retaliatory motive on the part of relevant agency officials, we find that agency officials involved in the appellant's termination did not have a strong motive to retaliate against the appellant. However, we disagree with the administrative judge's finding that these officials had no motive to retaliate against the appellant. Agency officials that were either directly involved in or that could have influenced the decision to terminate the appellant were the subjects of her disclosures. Thus, we find that, under the circumstances of this case, relevant agency officials had a slight retaliatory motive. *See Whitmore*, 680 F.3d at 1370-71 (finding that the appellant's criticisms "cast [the agency], and, by implication all of the responsible [agency] officials, in a highly critical light by calling into question the propriety and honesty of their official conduct"); *Russell v. Department of Justice*, 76 M.S.P.R. 317, 326 (1997) (considering the fact that the agency officials were the subjects of the appellant's protected disclosures in determining that they had a retaliatory motive). We therefore modify the administrative judge's finding regarding *Carr* factor two to find the existence of a slight retaliatory motive.

¶41    Finally, regarding *Carr* factor three, the appellant alleges that the agency did not take similar actions against employees who had not engaged in whistleblowing but who were otherwise similarly situated.  PFR File, Tab 1 at 33. Our reviewing court has long held that, for purposes of assessing this factor, "*Carr* does not impose an affirmative burden on the agency to produce evidence with respect to each and every one of the three *Carr* factors to weigh them each individually in the agency's favor," and that "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis." *Whitmore*, 680 F.3d at 1374.   However, it also has observed that "the Government's failure to produce evidence on this factor 'may be at the agency's peril,' considering the Government's advantage in accessing this type of evidence." *Miller v. Department of Justice*, 842 F.3d 1252, 1262 (Fed. Cir. 2016) (quoting *Whitmore*, 680 F.3d at 1374).

¶42    Here, the agency contended that there were no other employees in the appellant's office who demonstrated similar conduct issues.  W-2 AF, Tab 45 at 19.  The agency further alleged that there were no other employees in that office who were serving a trial period like the appellant.  *Id.*  The administrative judge found, accordingly, that there was no evidence that the agency took similar actions against employees who are not whistleblowers but who are otherwise similarly situated.  She concluded that this *Carr* factor helps neither the appellant nor the agency.  W-2 ID at 27.

¶43    We find that the administrative judge did not adopt an unduly restrictive view of what it means to be "similarly situated" for purposes of this appeal. *Carr*, 185 F.3d at 1327 (finding that "the 'support staff' employees of the New Haven hearing office were not similarly situated to Ms. Carr" when the employees were supervised under separate chains of command).  Furthermore, we agree with the administrative judge's finding that the third *Carr* factor is not a significant consideration under the circumstances of this case.  *See Rumsey v. Department of Justice*, 120 M.S.P.R. 259, ¶ 36 (2013) (finding that, when there

was no evidence in the record concerning how the agency treated appropriate nonwhistleblower comparators, consideration of this factor did not materially assist the Board in deciding whether the agency had met its burden of proof).

¶44    Even if *Carr* factor three could be found to "cut slightly against the Government," we are nonetheless left with the firm belief that the agency would have taken the same action in the absence of the appellant's protected disclosures based on the strength of the evidence in support of its action and the absence of a sufficient motive to retaliate against her.  *See Mithen v. Department of Veterans Affairs*, 122 M.S.P.R. 489, ¶ 36 (2015) (holding that the Board does not view the *Carr* factors as discrete elements, each of which the agency must prove by clear and convincing evidence; rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole), *aff'd*, 652 F. App'x 971 (Fed. Cir. 2016); *Sutton v. Department of Justice*, 94 M.S.P.R. 4, ¶¶ 19-21 (2003) (finding that a whistleblower was lawfully removed based on the evidence under *Carr* factors one and two, when the record contained no evidence of action taken against similarly situated nonwhistleblowers), *aff'd*, 97 F. App'x 322 (Fed. Cir. 2004).  Accordingly, we agree with the administrative judge's conclusion that the agency established by clear and convincing evidence that it would have terminated the appellant during her trial period in the absence of her protected whistleblower disclosures.  Thus, we conclude that the appellant is not entitled to corrective action in her IRA appeal.[8]

---

[8] As previously noted, the appellant argued on review that the administrative judge committed a procedural error by delaying the issuance of the initial decision and that the administrative judge failed to consider that the agency violated the notice requirement in the appellant's union contract by failing to provide her with sufficient notice of her termination.  PFR File, Tab 1 at 7 n.2, 13, 26.  These assertions do not provide a basis for review.  The appellant's argument that she received insufficient notice is not material to the dispositive issues in this IRA appeal.  Furthermore, to the extent the issuance of the initial decision was delayed, the appellant has not shown that any delay prejudiced her substantive rights.  An adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversal of an initial decision.  *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984).

**NOTICE OF APPEAL RIGHTS**[9]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You may obtain review of this final decision.  5 U.S.C. § 7703(a)(1).  By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file.  5 U.S.C. § 7703(b).  Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction.  If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements.  Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case.  If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**.  As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision.  5 U.S.C. § 7703(b)(1)(A).

---

[9] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions.  As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of

discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or

other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[10] The court of appeals must receive your petition for review within **60 days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The

---

[10] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017. The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017. Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                    /s/ for
                                  _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.